## Charles Russell v. State of Nebraska.

### Filed September 18, 1901.    No. 11,936.

1. **Waiver.** Rulings not argued are deemed waived.

2. **Application for Continuance Must Be Included in Transcript.** An assignment of error for the overruling of an application for a continuance is unavailing, where such application is not included in the transcript.

Russell v. State.

3. **Continuance:** ABSENT WITNESS: AFFIDAVIT: ADMISSION BY STATE. It is not error to overrule an application of a defendant in a criminal case for a continuance on the ground that a witness is absent, where the state admits the witness, if present, would testify as stated in the affidavit in support of the motion, and that the statement of the affidavit might be used in evidence on the trial.

4. **Juryman Must Have Qualifications of Elector.** To constitute one a competent juryman he must have resided in the state six months, in the county forty days and in the precinct, township or ward ten days and be twenty-one years of age or more.

5. **Emancipated Minor May Acquire Domicile.** Ordinarily, an infant is incapable of changing his domicile. An emancipated minor may acquire a domicile or residence of his own.

6. **Objection to Venireman Must Be Raised in Trial Court.** An objection that a venireman is not a qualified juryman is unavailing, unless specifically raised in the trial court.

7. **Only Unqualified Opinion Disqualifies a Juror.** An opinion formed by a juror does not affect his competency, or afford ground for challenge for cause, unless the opinion is unqualified as to the merits of the cause and such as will interfere with rendering a fair and impartial verdict upon the evidence under the instructions. *Basye v. State*, 45 Nebr., 261.

8. **Prosecutor May Outline Testimony.** In a prosecution for murder it is competent for the county attorney before the introduction of testimony to outline to the jury the evidence which the state expects to produce to sustain a conviction.

9. **Opinion of Witness in Case Stated, Incompetent.** It is incompetent for a witness testifying to a comparison made between one of the feet of a horse which the prisoner was known to have ridden on the day of the homicide and tracks of a horse found near the place where the crime was committed and leading in the direction of the defendant's home, to give his opinion or belief as to whether the tracks were made by such horse.

ERROR from the district court for Sioux county. Tried below before WESTOVER, J.  *Reversed.*

*Albert W. Crites* and *W. H. Fanning,* for plaintiff in error:

On the 18th day of May, 1900, Alois F. Staudenmaier was found dead on the prairie some three miles from his own home and something over six miles from the home of

37

the plaintiff in error. There were a number of bullet holes in the body, and there is little doubt that he came to his death by murderous violence. He was last seen alive sometime after six o'clock in the morning of that day. He started out on horseback at that time to look after his stock, and it would have taken him 30 or 40 minutes, on the pony he was riding, to have reached the place where his body was found. Considerable rain fell at about eleven o'clock in the forenoon, and the clothing on the body was wet through. It is fair to presume that he was killed between seven o'clock and eleven o'clock in the forenoon of that day. The plaintiff in error was convicted of his murder. Witnesses for the state claim to have followed a peculiarly marked horse-track from a point near the body, for more than three miles, over rugged hills and down steep and precipitous dales to a point near where it is admitted the accused rode along on horseback at about eight o'clock on the morning of that day. The state's witnesses differ as to the point near the body where this track was first taken up. All agree, however, that this tracking was not done until the next day and the following Tuesday. The murder was committed on Friday. It is claimed that the track followed had peculiarities similar to the track of the horse the accused was known to have ridden, at and after eight o'clock in the morning of that day. His whereabouts up to eight o'clock is accounted for. At nine o'clock he was nine miles from where the body was found. No sufficient motive is shown for the commission of the crime.

*Frank N. Prout, Attorney General,* and *Norris Brown, Deputy,* for the state.

NORVAL, C. J.

In the district court of Sioux county Charles Russell was prosecuted for the murder of one Alois L. Staudenmaier. From a verdict of guilty, and from a sentence to life imprisonment entered thereon, the accused has prose-

cuted this proceeding, assigning 185 errors. Only those especially argued will be considered, the others being deemed waived.

The court below denied an application made by defendant before trial for a continuance of the cause, which ruling is the first one assailed. A short answer to this assignment of error is that the motion or application for a continuance is not contained in the record brought here, therefore this assignment is unavailing. *Lean v. Andrews,* 38 Nebr., 656; *Jandt v. Deranlieu,* 43 Nebr., 422; *Ball v. Nelson,* 45 Nebr., 205.

But the assignment should be overruled on a ground less technical. It may be inferred from the transcript that the application for a postponement of the trial was based upon the absence of witnesses deemed material for the defense. Pending the hearing of the motion counsel for the state made the following concession and offer which were entered upon the court journal: "The state here admits that the witnesses named in the application for a continuance, if present, would testify to the facts which, it is stated in the application, they would testify to, and the state consents that the application in so far as it sets forth the facts to which these witnesses will testify may be read at the trial, except the testimony of such of the witnesses as may be present at the trial, the state expecting that two of these witnesses will be present." The defendant objected to the offer and admission on the ground that the prosecution was for murder in the first degree and the concession ought to be of the absolute truth of the facts stated in the application, being the facts to which it stated the witnesses would testify. The court below ruled the concession sufficient, and denied the continuance. This decision is in line with the rule announced by this court in two felony cases to the effect that a motion made by a defendant in a criminal case for a continuance on the ground of the absence of a witness may be overruled when the state admits that the witness, if present, would testify as stated in the affidavit in support of the motion. *Fanton v. State,* 50 Nebr.,

351, 357; *Catron v. State*, 52 Nebr., 389. The question here raised was fully considered in the cases just cited, and we are entirely satisfied with the conclusion therein reached. A different rule can not be established in a prosecution for murder than obtains in other felony cases. The constitution guarantees that one prosecuted for a crime shall be confronted with the witnesses against him, but the fundamental law does not make it necessary that the defendant's witnesses shall be present in the court. One charged with murder is no more entitled to the presence in court of his witnesses than one prosecuted for grand larceny, and in such case we have decided that the prisoner has no such right.

The defendant challenged a juryman Albert Estler on the ground that he had not been a resident of the state a sufficient length of time to entitle him to serve as a juror. It is disclosed beyond dispute that Estler became twenty-one years of age on August 21st, 1900, a month preceding the trial, that he formerly lived and made his home with his parents in the state of New York, that he came to Nebraska about eight months before the trial and has resided here ever since, working by the month. By section 657 of the Code of Civil Procedure male persons over the age of twenty-one years and having the qualifications of electors are made competent jurymen. To constitute one a qualified voter he must be of the age of twenty-one years or upwards and reside in the state six months, in the county forty days, and in the precinct, township or ward ten days. Compiled Statutes, ch. 26, sec. 3. The defendant argues that the residence of an infant is that of his parents or guardian, and that as Estler was an infant when he came to this state he was incapable of changing his domicile until he reached his majority, which was less than six months prior to his being called as a juror. The general rule as to the power of an infant to change his own residence is doubtless in harmony with the contention of defendant. But that rule, like many others, has its exceptions. A minor who has been emancipated by his parents

is capable of acquiring a legal domicile or residence of his own. 10 Am. & Eng. Ency. Law (2d ed.), 31, note and cases there cited. The record in this case shows that Estler, before coming to Nebraska, had been for some considerable length of time working away from the home of his parents, and with his wages bought his own clothes, and that he came to this state to make his home here, with the consent of his parents—in fact that they emancipated their son, and therefore he was capable of acquiring a residence in this state. Having resided in Nebraska more than six months prior to his being called as a juror and being more than twenty-one years old at the time, he was a qualified voter.

Something is said in the briefs relative to Estler having formed an opinion as to the guilt or innocence of the accused, hence was not a competent juryman. As he was not challenged for cause on that ground the question is not before us for review.

Errors are assigned for the overruling of several challenges of the prisoner for cause of veniremen George Hill, N. L. Tipton, John Stratton, Frank Stratton and Dan Jordan, on the ground that they had severally formed an opinion as to the guilt or innocence of defendant. A careful perusal of the voir-dire examination of these jurors discloses that every one of them was a competent juror within the rule announced in *Basye v. State,* 45 Nebr., 261, although he had heard about the case and read newspaper accounts concerning the tragedy. Not one of these persons entertained a settled, fixed, unqualified opinion relative to the guilt or innocence of the accused.

Complaint is made of the alleged misconduct of the county attorney in making his opening statement to the jury prior to the introduction of any evidence. The bill of exceptions contains the following concerning the matter:

"By Mr. Crites:

"M. J. O'Connell, Esq., county attorney, in making the opening statement to the jury made use of these words:

'That H. H. Russell the father of the defendant stated on an occasion last fall that if Charles Russell did not kill Staudenmaier he would not get a cent of his property.' To this statement the defendant objects on the ground that it is misconduct of counsel, improper at this time and improper in evidence at any time in the trial of this case.

"By Mr. Harrington:

"The state claiming that the portion of the record just made by counsel for the defendant is unfair to the county attorney and requests that the county attorney may now be permitted to repeat facts to the jury, showing as he has already stated that these statements alleged to be made by H. H. Russell were made in a conversation with the defendant at the home of H. H. Russell to the defendant.

"By Mr. Crites:

"The defendant still objects to this statement as it purports to be amended on the ground that this misconduct of the county attorney in making such a statement to the jury, that it is improper in the standing statement and inadmissible to be proven as evidence at any stage in this case.

"Objection is overruled.

"Exception by defendant.

"By Mr. Harrington:

"Whereupon the county attorney reiterates his statement to the jury for the purpose of making the record fair and complete.

"By Mr. O'Connell:

"Some time last fall Fred Mason was at the home of Charles Russell; there were present Charles Russell, his father and Fred Mason; Staudenmaier passed by the place; the father of the defendant said to Charles Russell, 'If you do not kill that man you will never get any of my property,' or 'I will never will you any of my property,' or something to that effect.

"By Mr. Crites:

"To this statement the defendant objects.

"By Mr. O'Connell:

"Charles Russell replied something to this effect, 'Never mind, old man, I will get him yet.'

"By Mr. Crites:

"To this statement and to every part of it the defendant objects on the ground that the same is misconduct of counsel, improper to be made in the opening statement and improper to be presented at any stage in this case.

"Overruled. Exception."

There was nothing improper in the statement made by the prosecution. He merely outlined to the jury an important and material fact in the case. If the defendant and his father prior to the homicide made the expressions imputed to them, as the evidence in the case shows they made such statements, they were important and material to the state, since they tended to establish premeditation and malice.

By a number of the witnesses a horse was tracked from near where the body of the deceased was found in the direction and near the home of the accused. The defendant was riding on horseback the forenoon of the day of the homicide. One hoof of the horse had a peculiar shape and made an unusual imprint upon the ground. The horse which was tracked from near the body of deceased also made a similar track. Several of the witnesses called by the state which were non-experts were permitted to testify, over objection of defendant, that the tracks of the horse leading from the place where the homicide was committed were made by the horse which the defendant was riding the morning of the tragedy, and one witness, over like objection, was permitted to testify that he believed that the tracks in question were made by said horse. This evidence was clearly inadmissible, and prejudicial to the prisoner. In *Clough v. State*, 7 Nebr., 320, a conviction for murder, it was ruled that it was not competent for a witness testifying to a comparison made between one of the prisoner's boots and a bloody foot-print found

near the place where the homicide was committed, to give his opinion as to whether that boot made the track. So in the case at bar it was wholly incompetent for a witness to testify that the track of a horse leading from the place where the body of deceased was found was made by the horse which defendant was known to have ridden, much less that the witness believed that the tracks were so made. That was invading the province of the jury. For the admission of this testimony the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

SULLIVAN, J., absent, not voting.

NOTE.—In a trial for murder there was testimony tending to show that the person who fired the shot that killed the deceased wore a certain pair of rubber boots, which it was conceded did not belong to the prisoner. The prisoner went upon the stand and testified that he could not get these boots upon his feet, and at the request of his counsel made apparently extraordinary efforts to put them on in the presence of the jury, but without effect. In rebuttal the state called a shoemaker, and had him measure the boots and the prisoner's feet, whereupon he testified that a foot of that size could wear those boots; held no error. State v. Nordstrom, 7 Wash., 506, 510. As to an instruction in regard to motive. Ibid.—REPORTER.