## WILLIAM S. ROWND V. STATE OF NEBRASKA.

### FILED MARCH 28, 1913.    No. 17,857.

1. **Forgery:** INFORMATION: SUFFICIENCY. In an information for forgery, the phrase, "did knowingly  *  *  *  utter and publish  *  *  * as true and genuine,  *  *  *  a certain false, forged and counterfeited check," etc., sufficiently avers guilty knowledge that the instrument was forged. The use of the word "knowingly" is equivalent to an allegation that the person knew the facts subsequently stated.      '

2. **Criminal Law:** CONTINUANCE: REVIEW. Where the adverse party admits that witnesses, if present, would testify as stated in an affidavit for a continuance, and the party presenting such affidavit afterwards reads such statement in his affidavit as evidence to the jury, there is presented no ground for a reversal of the final judgment of the trial court because of its refusal to grant the continuance asked.   *Catron v. State*, 52 Neb. 389.

3. **Forgery:** IDENTIFICATION OF ACCUSED: EVIDENCE. Evidence that the defendant, during the time that the forged check, which he was charged with having uttered and published, was executed, presented for payment, and the payment of it obtained, was registered  · as a guest at a hotel in Omaha under the name of H. B. Sanford, and that the defendant and Sanford were one and the same person, when considered with the other evidence in the case, was competent as tending to identify the defendant as the person who uttered the forged instrument.

4. ———: ———: ———. Testimony that a niece of the defendant, who was intimate with the woman whose name was purported to be signed to the forged check, had access to her checks and private papers, knew of her business affairs, knew how much money she had and in what bank she kept it, that she was absent from the city of Omaha, that defendant and his said niece were intimate and were frequently together during that time, was competent as tending to identify the defendant and establish guilty knowledge on his part at the time he uttered and published the forged check.

5. **Criminal Law:** WITNESSES: INDORSEMENT OF NAMES ON INFORMATION. It is not a sufficient objection to the testimony of a witness that his name indorsed on the information was misspelled, in that, on the original information it was spelled Schmidt, while on the substituted copy it was spelled Schmitt, it appearing that the name on each information represented one and the same person.

6. **Forgery:** IDENTIFICATION OF ACCUSED: EVIDENCE. Evidence that the

defendant, when arrested, had in his possession another check payable to him under his assumed name of "H. B. Sanford," together with a pawn ticket issued to him under the name of "W. S. Sanford," was competent to connect the defendant with the commission of the crime charged against him.

7. **Criminal Law: INSTRUCTIONS: ALIBI.** An instruction containing the phrase, "The defendant has introduced evidence tending to establish what is known as an alibi," is not a disparagement of that defense, and is not subject to any just criticism. *Nightingale v. State*, 62 Neb. 371.

8. **Evidence** examined, its substance stated in the opinion, and *held* sufficient to sustain the verdict.

ERROR to the district court for Lancaster county: AL-BERT J. CORNISH, JUDGE. *Affirmed.*

*T. J. Doyle,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

BARNES, J.

William S. Rownd, hereafter called the defendant, was tried in the district court for Lancaster county on an information charging him with the crime of uttering and publishing a false, forged and counterfeited check for the payment of money. He was found guilty as charged in the information, and was sentenced to the penitentiary, under the indeterminate sentence act, for a term of from one to twenty years. To reverse that judgment he has brought the case to this court by a petition in error.

The charging part of the information upon which the defendant was tried reads as follows: "That the said William S. Rownd, alias W. S. Raymond, in the county and state aforesaid, on or about the 19th day of April, 1912, in said county and state, he, the said William S. Rownd, alias W. S. Raymond, having in his custody and possession a certain false, forged and counterfeited check for the payment of money, which is in the words and figures as follows, to wit, 'Omaha, Neb., April 17, 1912. No. —

The Omaha National Bank.   (27-2) Pay to the order of A. H. Stanton $220.00 two hundred and twenty dollars. Women's Department—Mary Sutman'—did knowingly, unlawfully and feloniously utter and publish the same as true and genuine; with the unlawful and felonious intent then and there to defraud, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the state of Nebraska."

It appears that to this information the defendant filed a demurrer, which was overruled, and defendant contends that the court erred in overruling his demurrer. It is argued that there is no averment in the information that the defendant uttered the check, knowing the same to be forged, and therefore the information was insufficient to charge the commission of a crime. Many authorities are cited in support of this contention, and it may be conceded that to charge the crime of uttering and publishing a forged check, as defined in section 145 of the criminal code, the words, "knowing the same to be false," or their equivalent, must appear in the information, and where such words are wholly omitted from the information it will not sustain a conviction. It must be observed, however, that the word "knowingly" is not omitted from the information. But it is argued that, as it is used therein, it must be held to modify and relate only to the charge of uttering and publishing the check in question, and therefore it is not charged that defendant uttered and published that instrument, knowing it to have been forged. This is not a new question, and there are some cases which support defendant's contention. But the rule announced in those cases is not sustained by the greater number and better considered decisions in this country. We think the rule is that the word "knowingly," as used in the information in this case, qualified all words following, and it is thereby equivalent to the words used in the statute, "knowing the same to be false." In *United States v. Clark*, 37 Fed. 106, it was held that "an indictment under Rev. St. U. S.

sec. 3893, charging that defendant did knowingly deposit for mailing and delivery certain obscene pictures, etc., is not open to the objection that it is not alleged that the defendant knew the character of that which he deposited." In 2 Bishop, New Criminal Procedure (2d ed.) sec. 556, it is said: "The adverb will suffice when so employed as to satisfy the demand for directness." In *State v. Williams*, 139 Ind. 43, the court held: "In an indictment for forgery the phrase, 'did * * * knowingly utter, publish and pass * * * as true and genuine, a certain false, forged and counterfeit promissory note,' etc., sufficiently avers the guilty knowledge that the instrument was forged." The court said that the use of the word "knowingly" is equivalent to an allegation that the person knew the facts subsequently stated; that to knowingly utter a forged instrument is the usual form of expression, and fully avers the guilty knowledge that the instrument was forged. As we view the weight of authority, the district court did not err in overruling the defendant's demurrer to the information.

It is also contended that the court erred in overruling the defendant's motion for a continuance. The affidavits in support of the motion alleged that two witnesses living in Kansas City were desired at the trial; that notice had been served to take their depositions in Kansas City, and before they were taken the defendant was arrested and placed in jail in that city until he was liberated by habeas corpus. In opposing the motion for a continuance, it was admitted in open court, by counsel for the state, that the witnesses named would testify, if present, that from April 12 to April 25, 1912, W. S. Rownd was in Kansas City every day, and that he was not in the city of Lincoln during that period.

The granting or refusal of a continuance is a matter of discretion with the trial court, and ordinarily will not be reviewed by the supreme court. Error can be predicated upon the ruling of the district court only in cases where there has been an abuse of discretion; and it has

been universally held by this court that, where the state offers to admit that an absent witness will testify to the facts alleged in the affidavit for a continuance, it is not error to overrule the motion. *Catron v. State,* 52 Neb. 389; *Russell v. State,* 62 Neb. 512; *Foster v. State,* 79 Neb. 259. It appears that the affidavits were read in evidence as though the statement contained therein was the testimony of the absent witnesses. Therefore there was no abuse of discretion on the part of the trial court in overruling defendant's motion for a continuance.

It is next contended that the court erred in receiving in evidence the hotel register and cashbook of the Wellington hotel in Omaha, which showed that H. B. Sanford of Kansas City, Missouri, registered at that hotel April 13, and that he paid his room rent on April 26, 1912. The proprietors of that hotel, a Mr. and Mrs. Hamilton, both testified positively that the defendant, W. S. Rownd, was the man who registered at their hotel as H. B. Sanford, and that they saw him practically every day of the time between April 13 and April 26. For the purpose of showing that the defendant Rownd and H. B. Sanford were one and the same person, this testimony was competent. After defendant's arrest there was found in his room, and among his effects, a check made payable to H. B. Sanford, and a pawnbroker's receipt indorsed by W. S. Sanford. This testimony was objected to as incompetent and immaterial, but was received by the trial court. It is now contended that the defendant's objections should have been sustained. It appears that these papers were taken from defendant's trunk in Lincoln, after his arrest. They were links in the chain of identification by which it was sought to prove that defendant was the man who uttered the check in question in the City National Bank at Lincoln. The fact that Rownd registered at the Wellington hotel at Omaha for two weeks, during which time he came to Lincoln and secured the money on the check, may be said to have been established, if the testimony of the Hamiltons was believed.

It also appears in evidence that, while defendant was registered at the Wellington hotel, he was in frequent communication with one Elsie Waters, who is admitted to be his niece. Defendant contends that this evidence was incompetent and highly prejudicial, and for its admission the judgment should be reversed. We think this testimony was competent, and was properly introduced for the purposes of identification. The testimony also developed the fact that Elsie Waters was intimate with Mary Sutman, whose name appeared to be signed to the forged check. It was also shown that Elsie Waters had access to the private papers of Mary Sutman; that she knew of her business affairs, knew how much money Mary Sutman had, and in what bank she kept it. The testimony also showed that Elsie Waters called upon the defendant while he was registered at the Wellington hotel under the name of Sanford, talked with him over the telephone at various times, and occasionally met him on the street. There was some evidence tending to show that the signature of Elsie Waters resembles that of the signature on the forged check. This testimony was strenuously objected to, and error is predicated for its reception. This evidence not only tended to identify the defendant as the man who uttered the check, but also tended to establish a guilty knowledge on his part at the time he uttered and published it. There was also a letter introduced in evidence, written by Elsie Waters to Mary Sutman, which was mailed in Omaha on April 16, some two days prior to the time the defendant appeared in the City National Bank of Lincoln and presented the check for payment. This evidence showing the close acquaintance of Elsie Waters with the defendant is material and competent. The state was required to identify the man who uttered the forged check as the defendant on trial, and this evidence was competent. It also tended to show the probability of the defendant's having the check purporting to be signed by Mary Sutman, as well as the knowledge on his part that it was a forgery. We are therefore

of opinion that all of this evidence was material and competent.

It is defendant's contention that the court erred in receiving the testimony of one John Schmidt, over the defendant's objection that his name was not indorsed upon the information. It appears that the original information was lost, and by agreement of the parties a copy produced by counsel for the defendant was agreed upon as a true copy of the original information. On motion of the county attorney, he was permitted to indorse on the substituted information the names of the witnesses that were indorsed on the original information. Among those witnesses was the name of John Schmitt. Objection was made to the testimony of this witness because his name on the original information seems to be spelled "Schmidt," instead of "Schmitt," as it appears upon the substituted information. It would seem that this objection was without merit. The two names are pronounced exactly alike, and it is not contended that they were used to designate different witnesses. But, as a matter of fact, they referred to the same person whose name was indorsed on the original information.

Defendant contends that the court erred in receiving in evidence the check made by one E. W. Roberts payable to H. B. Sanford. This check was in a picture frame behind a post card picture found in the trunk of the defendant Rownd at a time subsequent to his arrest. It is contended by the state that this check was an important piece of evidence, in that it tended to identify Rownd as the H. B. Sanford who stopped at the Wellington hotel from April 13 to April 26, 1912, and who uttered the forged check in Lincoln on the 18th day of that month. It is true that this evidence did not bear directly upon the crime committed by the defendant, but it served to identify the man who did commit the crime with the defendant Rownd who was charged with its commission. The fact that he had in his possession a check payable to H. B. Sanford, taken in connection with the other evidence

31

which we have previously discussed, was competent evidence to connect the defendant with the commission of the crime charged.

Defendant contends that the court erred in receiving the testimony of one Brouillette. That witness testified that he took Elsie Waters to two different dances in April, 1912; that on one occasion she told him that Mrs. Sutman was coming back from Canada because there had been a check forged on her for $200. It appears that this statement was made to Brouillette before it was known that the forged check in question had been passed. This testimony tended to show a plan of action between Elsie Waters and the defendant, which indicated an arrangement by which the check was forged, and finally presented to the bank in Lincoln for the purpose of having it cashed. The evidence found in the record in relation to the conduct of Elsie Waters and the defendant, together with their intimacy, rendered the evidence in question competent.

Error is also predicated on the admission of the testimony of one Scott. It appears that he was employed by the insurance company that was attempting to find the man who had defrauded the Omaha and Lincoln banks. The witness was present at the time the room and trunk of defendant were searched immediately subsequent to his arrest. He testified that he found among those effects the check signed by Roberts, a pawn ticket signed by the name of W. S. Sanford, which was issued by one L. Goldman of Kansas City under No. 9502. It appears that when Scott examined the effects of the defendant he made a memorandum in regard to the pawn ticket, and reported the same to a detective office at Kansas City, after which he destroyed his memorandum. The witness remembered the number of the pawn ticket which was signed by W. S. Sanford, but was compelled to refer to a copy of his report to identify the date, which was March 20, 1912. This testimony was competent under the rule announced in *Erdman v. State,* 90 Neb. 642, 651.

It appears from the evidence that the defendant was known by the name of W. S. Raymond; that he was known in Omaha under the name of H. B. Sanford. There is also in the record evidence of expert witnesses on handwriting to the effect that the same man signed W. S. Sanford to the pawn ticket, and H. B. Sanford on the register of the Wellington hotel in Omaha, and on the register of the Blossom House in Kansas City.

It is impossible, within the limits of this opinion, to discuss all of the 80 assignments of error contained in the record; but all of them have been carefully considered, and, as we view the record, the evidence objected to was competent and was properly admitted, and this is sufficient answer to those assignments.

It is contended that the court erred in giving to the jury instruction No. 5. It was the theory of the defendant that he was not in the city of Lincoln at the time the money was obtained on the forged check at the City National Bank, but was in the city of Kansas City. Instruction No. 5 stated the law relating to that defense. The only objection to the instruction is the use of the words, "tending to show what is known as an alibi." It is argued that this expression is a disparagement of the defense. We think this objection is too technical to receive serious consideration. A like instruction was given by the court in *Nightingale v. State*, 62 Neb. 371, where it was said: "This instruction, we think, is not subject to any just criticism." There was evidence in the instant case tending to show an alibi, and the court properly put the question before the jury by the instruction complained of.

Finally, it is contended that the evidence was insufficient to sustain the verdict. As we view the record, the state showed by Mary Sutman that the check in question was forged. It was shown by the testimony of Neil Dunn, the collection clerk for the City National Bank of Lincoln, that the defendant in this case came into the bank between 11 and 11:30 o'clock on April 19, 1912, and presented the check to have it cashed. Payment was refused;

but, at the suggestion of the witness, Rownd left the check with him for collection. He testified that he saw Rownd write on the back of the check the name "C. A. Clark." The check was sent to the Omaha National Bank for collection. On April 22 the City National Bank was notified that the Omaha National Bank had credited it with the amount of the check, and on April 25, about 11 o'clock, or shortly afterwards, Mr. Rownd, the defendant, entered the front door of the City National Bank, approached the desk of the witness Dunn, who handed him a cashier's check for the amount of the forged check, less collection. The defendant immediately indorsed it, took it to the paying teller, and there secured the money. The witness Dunn positively identified Rownd as the person who cashed this fraudulent check in his bank. The identification seems to be complete and positive. It is true that Dunn admitted on cross-examination that he was not infallible, but he was positive that the defendant was the man who obtained the money on the forged check. This evidence, if believed by the jury, would be sufficient to sustain the conviction.

The state also showed by Harold and Sadie Hamilton, proprietors of the Wellington hotel in Omaha, that the defendant William S. Rownd registered at their hotel April 23, 1912, as H. B. Sanford, and remained there until April 26. They related so many details about his visit that it is hardly possible that they could be mistaken about him. He was blind in one eye, and wore a glass eye. This was noticed by the Hamiltons at the time he was their guest. It appears that he frequently came to the desk and talked with them, and on one occasion got locked in his room, and had to come down on the fire escape. They also had some controversy with him at a time he was entertaining Elsie Waters in his room. These matters tend to show that the Hamiltons could not be mistaken in identifying the defendant as H. B. Sanford.

The state also showed that in Rownd's effects was the check made payable to H. B. Sanford. Defendant ad-

mitted that he was in Kansas City on May 19, and the register of the Blossom House in that city contains his signature on that date as H. B. Sanford. It appears that that signature was written by the same man who registered as H. B. Sanford in Omaha. The state showed the intimate acquaintance between Sanford and Elsie Waters, the niece of the defendant, by several witnesses. This tended to identify the man Sanford as the defendant Rownd, and also tended to show the guilty knowledge of the defendant in passing the forged check. The state further showed, by expert witnesses on handwriting, that the name C. A. Clark, as indorsed on the fraudulent check, and the name C. A. Clark, written on what is called exhibit 1, which is in evidence, were written by the defendant, and were written by the same man. The state also showed by several expert witnesses that the man who wrote the name H. B. Sanford on the hotel register in Omaha signed W. S. Sanford to the pawn ticket in Kansas City.

It further appears that Elsie Waters knew that the check in question had been forged, and that Mary Sutman, whose name appeared to be signed to it, was absent from the city of Omaha, and was in Canada at the time the check was presented for payment; that communication could not be had with Mary Sutman until a sufficient time would elapse to secure its collection; that a sufficient amount of money was deposited in the Omaha National Bank by Mary Sutman to pay the check, and that defendant and Elsie Waters were together at Excelsior Springs and Kansas City after the check in question was paid. It is true that defendant produced the depositions of four persons who declared that Rownd was in Kansas City during the time the forged check was cashed in Lincoln. Upon this question there was a clear conflict of testimony; but it was the province of the jury to determine the effect of this evidence.

It may be further said that, if the jury believed the testimony of the state's witnesses, it showed that Sanford

was at the Wellington hotel in Omaha from the 13th day of April, 1912, to the 26th of that month, during which time the check in question was presented to and cashed by the bank in Lincoln, and it was apparent to them that the defendant could come to Lincoln every day and transact business, if he so desired, and return to Omaha, and thus be seen about the hotel where he was registered on each day during the whole time he was stopping at the Wellington hotel.

As we view the evidence, it is sufficient to sustain the verdict, and finding no prejudicial error in the record the judgment of the district court is

AFFIRMED.

LETTON, J., not sitting.