**UNITED STATES of America, Appellee,**

v.

**Luie Ernest WHITE, Appellant.**

**No. 80–1939.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1981.

Decided April 3, 1981.

Certiorari Denied June 15, 1981.
See 101 S.Ct. 3092.

---

Raymond C. Conrad, Federal Public Defender, W. D. Missouri, R. Steven Brown, Asst. Federal Public Defender (argued), Springfield, Mo., for appellant.

Ronald S. Reed, Jr., U. S. Atty., Robert G. Ulrich, Asst. U. S. Atty. (argued), Springfield, Mo., for appellee.

Before LAY, Chief Judge, and STEPHENSON and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Luie Ernest White appeals his two-count conviction for bank robbery and kidnapping in violation of 18 U.S.C. §§ 2113(a), (d) and 1201, respectively. The district court[1] entered a judgment of conviction on verdicts returned by the jury following a three-day trial. On appeal White contends that the district court erred in (1) failing to grant his motion for judgment of acquittal at the close of the Government's case-in-chief for lack of sufficient evidence to convict, (2) admitting into evidence a tool known as a dent puller, and (3) giving an alibi instruction concerning his codefendant which emphasized White's failure to present a defense to the crimes charged. We reject these contentions and affirm.

### I.

Darrell Spillers was the executive vice-president of the Cornerstone Bank, South West City, Missouri.[2]  On March 11, 1979,

---

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri, sentenced White to concurrent 15- and 20-year terms of imprisonment.

2. As its name suggests, South West City is located in the southwestern corner of the state, with city limits at the Missouri-Oklahoma bor-

Spillers and his family returned home from church around 9:00 p. m. There they were greeted by two men wearing ski masks and wielding pistols. One of the men asked Spillers how much money he had in the house. Apparently unsatisfied with the answer, the man asked Spillers what time the safes at the bank would be open the following morning and threatened to hold Spillers's wife hostage until that time.

Spillers then offered to go to the bank that evening and take all the money which was accessible to him before morning. The man instructed Spillers to return with at least $15,000 and threatened to kill his family if Spillers called for help. Until Spillers returned from the bank, his family, ordered to lie prone on the floor of the family room, was held at gunpoint.

When Spillers came home from the bank, the men counted the money and arranged for their getaway.[3] They demanded that Spillers accompany them on the first leg of their flight as insurance against the possibility that he had called for help while at the bank. One of the men took the driver's seat of Spillers's automobile and, with his compatriot in the back seat and Spillers in the front passenger's seat, proceeded through the northwestern corner of Arkansas into the northeastern corner of Oklahoma. There they passed a gold or brown Ford automobile backed into the driveway of what Spillers recognized as the old city garbage dump.

The driver pulled in past the driveway and at his compatriot's direction threw the keys to Spillers's car down the road. After Spillers heard the two men drive away in the Ford automobile, he searched unsuccessfully for his car keys. In short order he gave up looking for the keys and found a gas station back on the highway whose

proprietor drove him home to his family. Because his telephone lines had been cut by the intruders, he took his family back to their church and called law-enforcement authorities.

Although none of the Spillers family was able to identify the men who had held them on March 11, at trial the Government introduced evidence which linked both White and his codefendant, William J. R. Embrey,[4] to the robbery of the Cornerstone Bank and the kidnapping of Spillers. Some of this evidence depended on the discovery of the stolen 1975 Ford Elite automobile used by the robbers (and identified by Spillers) as their getaway car. McDonald County Deputy Sheriff Lee Brodie found the car abandoned outside the Greenwood Church near South West City. The ignition switch of the automobile was missing from its steering column.

Documentary evidence established that Embrey had purchased a dent puller, a flat blade screw driver, and galvanized screws from a store then known as the Joplin Auto Supply Company on March 10, 1979, the date on which the getaway car had been stolen.[5] FBI Special Agent Steve Funderburk testified that dent pullers were commonly used in stealing an automobile to remove its ignition and therefore prevent its steering wheel from locking.[6] Special Agent Funderburk also testified that he had seized a dent puller, subsequently admitted into evidence, following a consent search of Embrey's mobile home.

Two of White's female acquaintances, Edna Jean Childress and Patty Ann Renfro, testified to statements made by White in mid-March 1979. In response to Ms. Childress's question as to how he made a living, both women testified, White claimed to rob

der and one-half mile from the Missouri-Arkansas border.

3. Spillers subsequently determined that the money taken from the bank and handed over to the robbers amounted to $11,425.

4. White and Embrey are half-brothers.

5. The getaway car was stolen from its owner, Steve Crawford, in Miami, Oklahoma, on the evening of March 10.

6. Special Agent Funderburk explained that the head of a screw would be inserted into the dent puller and screwed into the automobile's ignition. The ignition would then be "pulled" by means of the dent puller and the car started with a screw driver.

banks and pointed to a newspaper article on the Cornerstone Bank robbery. Ms. Childress testified that White

> said that they had stolen a car and went to the banker's home and had kept the banker's family there and sent the banker after the money, and the banker came back and then they took the banker to a dirt road and let him out, and then they took the car and parked it in a churchyard. * * * He said that he wore coveralls with a ski mask.

Special Agent Funderburk testified that he had scrutinized local press coverage of the robbery and, although many of the details in White's admissions were matters of public knowledge, that the stolen getaway car had been abandoned in a churchyard was not.[7]

Finally, the Government introduced the testimony of Franklin Sanders, a convicted burglar and cousin of Darrell Spillers. Sanders recalled that in January or February 1979 he and Embrey had generally discussed the possibility of robbing different places, including the Cornerstone Bank. Thereafter on March 8, 1979, Embrey drove White to Sanders's residence in Noel, Missouri, and White asked Sanders if he would take a ride with them. Embrey then drove White and Sanders to South West City. On the way to South West City Embrey asked Sanders to point out the house of Darrell Spillers. In South West City White noted the location of the Cornerstone Bank, and in due course Sanders pointed out the Spillers residence. As they reached the residence Embrey remarked that they "would have to go in after them."

They proceeded through town to a package liquor store and turned back. After leaving the liquor store White commented "that it looked funny to go in stacking up

money during the daytime." As they passed through South West City again Embrey said that "they should go to Tulsa and get a car, so they'll think it came from down there." Between South West City and Noel White remarked to Sanders, "If we get caught, you will be our accomplice."

## II.

■ White first contends that the district court erroneously denied his motion for acquittal at the close of the Government's case. We have carefully reviewed the record in this case. Although counsel effectively cross-examined and impeached some of the most damaging testimony against White, on appeal we do not sit as finders of fact. Viewing the evidence, as we must, in the light most favorable to the Government, we are persuaded that it was sufficient to support the guilty verdicts returned by the jury. See *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Accordingly, we cannot say that the district court erred in denying White's motion for acquittal.

■ White next contends that the district court abused its discretion in admitting into evidence the dent puller seized by Special Agent Funderburk from Embrey's residence. White argues that the dent puller constituted evidence of a crime (automobile theft) other than the crimes charged and so it should have been excluded pursuant to Fed.R.Evid. 404(b).[8] As we have recently explained, "evidence of crimes or acts other than those charged in the indictment is admissible *either* if it completes the story of the crime on trial *or* if it qualifies under Fed.R.Evid. 404(b) as relating to intent, plan, and the like." *United States v. Ulland*, 643 F.2d 537 at 540 (8th Cir. 1981)

---

7. Ms. Childress testified that White discussed the robbery on three occasions over a two-week period. White subsequently returned to Ms. Childress and denied committing the robbery, claiming that he intended his prior statements only to test the trustworthiness of his girlfriend, in front of whom at least the first of these statements was made.

8. White also contends that the Government adduced insufficient foundation for the admission of the dent puller. The Government relied on the expert testimony of Special Agent Funderburk to lay the foundation for admission of the dent puller, and the district court erred neither in allowing Special Agent Funderburk to testify as an expert on automobile theft nor in admitting the dent puller on the basis of his testimony.

(emphasis in original). See *United States v. Two Eagle*, 633 F.2d 93, 95–96 (8th Cir. 1980). Admission of the dent puller served both to complete the story of the crimes on trial and to identify the perpetrators of those crimes.[9] The district court therefore correctly admitted the dent puller into evidence.

█ At trial White's codefendant, William Embrey, introduced the testimony of several witnesses that he was at his pool hall in Granby, Missouri, on the evening of the bank robbery. White himself offered no evidence in his behalf. In its jury instructions the district court instructed the jury as follows: "Evidence has been introduced that defendant Embrey was not present at the time when or at the place where he is alleged to have committed the offense charged in the indictment."

White finally contends that this instruction unduly emphasized his failure to offer any evidence in his defense. We simply cannot agree that this instruction impaired White's rights in any respect. Having been present throughout trial, the jury was well aware that Embrey had submitted evidence tending to establish an alibi, and that White had not. Moreover, the instruction given by the district court was one to which Embrey was entitled and White was not. In addition, the district court carefully stated and reiterated the burden of proof borne by the Government in establishing each defendant's guilt. When the challenged instruction is viewed in the context of the 23 pages of instructions read to the jury, it is apparent that the jury could not reasonably have given the instruction the interpretation of which White complains.

The judgment is affirmed.

---

9. Fed.R.Evid. 404(b) provides that evidence of other crimes may be admissible for purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."