George P. ROSE, as next friend of Marla G. Rose, Plaintiff,

v.

STATE OF NEBRASKA, et al., Defendants

James H. Monahan, as next friend of Daniel J. Monahan, George ROSE, as next friend of Marla Rose, Plaintiffs,

v.

STATE OF NEBRASKA, et al., Defendants.

Civ. Nos. 81–0–10, 80–0–164.

United States District Court, D. Nebraska.

Oct. 9, 1981.

---

Mino St. Lucas and James P. Miller, Omaha, Nebraska, for Monahan.

Quentin S. Hughes, Bellevue, Nebraska, for Rose.

Harold Mosher, Asst. Atty. Gen., Lincoln, Nebraska, for State.

John P. Heil, Omaha, Nebraska, for School District.

George Rose, pro se.

David Ryan, Asst. U. S. Atty., Omaha, Nebraska, for U. S. Secretary of Education.

## MEMORANDUM AND ORDER

RICHARD E. ROBINSON, Senior District Judge.

Marla Rose[1] and Daniel Monahan are handicapped children. Marla is deaf and her speech is impaired. Daniel has muscular dystrophy, he is currently confined to a wheelchair, and is mentally retarded.

In these two actions Marla and Daniel, through their respective next of friends, challenge the validity of certain portions of the Nebraska and federal statutes which relate to the education of handicapped children. See Neb.Rev.Stat. § 43–661—43–668 and 20 U.S.C. § 1401 et seq. Essentially, the plaintiffs are dissatisfied with the educational placement recommended by the defendant school district. This matter is currently before the Court upon the defendants' suggestion of mootness and motion to dismiss. A hearing on defendant's suggestion and motion in both cases was held on August 25, 1981. The suggestion of mootness in each case is considered separately below.

### *Monahan and Rose v. State of Nebraska et. al., 80–0–164.*

In this action the plaintiffs pray for both injunctive relief and damages claiming that § 43–662 Neb.Rev.Stat. is inconsistent with the federal Education for all Handicapped Children Act of 1975. 20 U.S.C. § 1401–1420. Judge Denney granted injunctive relief to Rose but denied same to Monahan on May 16, 1980. [See Memorandum and Order Filings 19 and 20]. The parties appealed and the Eighth Circuit Court of Appeals, in an opinion reported at 645 F.2d 592 (8th Cir. 1981), affirmed in part, vacated in part, and remanded the case 491 F.Supp. 1074 to the District Court. 645 F.2d at 599.

The federal Handicapped Children Act sets out various procedural requirements which states must follow in order to obtain federal funds for the education of handicapped children. These requirements protect the rights of handicapped children by establishing certain procedural safeguards. Among other things, the Federal Act requires that the parents of handicapped children be given prior written notice of any change in the educational placement of their children. If the parents are dissatisfied with the placement they are entitled to

---

1. Marla Rose was married to Timothy Corrado on May 3, 1981. For clarity, she is referred to here by her maiden name.

an impartial due process hearing. The Act provides, that subject to a specified appeals procedure, the decision made at the hearing is final. 20 U.S.C. § 1415.

To comply with the Federal Act, the Nebraska Legislature in 1978 amended its statutes dealing with the education of handicapped children by enacting L.B.871. That legislation includes the provision which is at issue here. Codified at § 43–662 Neb.Rev. Stat. (1978), it provides that:

> The 'State' Department of Education shall conduct hearings ... using hearing officers who shall prepare a report containing findings of facts based on the evidence presented and decisions based on such findings. After reviewing such findings and decisions the Commissioner of Education shall then recommend or direct such action as may be necessary.

The plaintiffs argued, both before Judge Denney and on appeal, that the statute conflicts with the Federal Act which requires that the due process hearing be final. They contend that the statute gives the Commissioner of Education the discretion to reject the hearing officer's findings thereby undermining their right to due process. In granting the preliminary injunction the District Court, Denney, J., found that the Nebraska and Federal Statutes were inconsistent. [Memorandum Opinion at 21. Filing # 19]. While not finding that the statutes conflict, the Appeals Court concluded that the "possible inconsistency raises questions sufficient to satisfy the preliminary injunction test." 645 F.2d at 599.

That portion of the Nebraska Statute which is allegedly inconsistent with the Federal Act was deleted by the Nebraska Legislature in July, 1980. L.B.855 deleted the portion of Neb.Rev.Stat. § 43–662 relating to the Commissioner's review of the due process hearing. *See* Neb.Rev.Stat. § 43–662 (Cum.Supp.1980). It also specifically provides for the finality of the hearing decision subject only to judicial review. Neb.Rev.Stat. § 43–666 (Cum.Supp.1980).

In light of the change in the Nebraska legislation, the defendants contend that the primary issue[2] in this action is now moot. They correctly point out that the challenged statute should be considered as it is currently written and not as it once appeared. *See Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969); *Golden v. Zwickler,* 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969).

The plaintiffs maintain that injunctive relief is still appropriate and that the issue is not moot because state law may again change "and the commissioner will again ignore federal law." Essentially, the argument is that the issue is not moot because it is "capable of repetition yet evading review." *Southern Pacific Terminal Co. v. I.C.C.,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). This exception to the mootness doctrine first appeared in *Southern Pacific Terminal Co.* and it has been invoked numerous times in the last seventy years. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1975); *Sec. v. Medical Comm. for Human Rights,* 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972); *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). The repetition-evasion exception is appropriate, however, only where there is a possibility that the challenged conduct or law will reoccur. When there is no possibility of repetition or where the likelihood of repetition is remote and speculative the issue is moot. *Defunis v. Odegaard,* 416 U.S. 312, 317, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164 (1974); *Hall v. Beals,* supra 396 U.S. at 49, 90 S.Ct. at 202.

In this case the possibility that the legislature will again amend the law so that it conflicts with the Federal Act is remote at best. This is particularly true since the Nebraska legislation was passed in an effort to comply with the requirements of the Federal Statute. *Nebraska Legislative*

---

**2.** Both the District Court and the Court of Appeals characterized the question of whether the Nebraska legislation conflicts with the Federal Act as the primary issue in the case. See

*Memorandum* p.3, May 16, 1980 Filing # 19; *Monahan v. Nebraska,* 645 F.2d 592, 595 (8th Cir. 1981).

*Floor Debate on L.B.871*, 85th Legis.2d Sess. 08706, 09246 (1978) (statements of Senator Koch). (Cited in Memorandum p.4, May 16, 1980 Filing # 19). This is not an appropriate case for the application of the repetition-evasion exception.

■ The Court finds that the recent amendment of Neb.Rev.Stat. § 43–662 and the enactment of Neb.Rev.Stat. 43–666 moot the question of whether the Nebraska statute is inconsistent with the Federal Legislation. As amended, the Nebraska statute eliminates any discretion previously vested in the Commissioner and thereby insures the integrity of the due process hearing.

While the recent amendments to the Nebraska statutes extinguish the plaintiff's claim that the Nebraska statute is at odds with the Federal Act, there is still a question of whether the case should proceed to a determination of what damages, if any, the plaintiffs have sustained. In this regard, the defendants claim that the entire controversy is moot. They point to various developments with respect to the status and educational placement of Marla and Daniel which they contend makes further proceedings unnecessary. In determining whether any justiciable issues remain, the Court will consider the background and current status of each child.

MARLA ROSE.

Marla Rose attended class at Beveridge Junior High School in the Omaha School District prior to the 1978–79 school year. The defendant School District notified Marla's parents in June, 1978 that it proposed to change Marla's placement from Beveridge to the Nebraska School for the Deaf. Her placement at the latter was to be on a residential basis. The proposed change in placement was based on the School District's determination that Marla was not making any progress under the oral method of instruction. The School District decided that Marla needed instruction in both the oral method and manual method of instruction. The Nebraska School for the Deaf was chosen because it is the only school equipped to teach both methods to a person of Marla's age.

Dissatisfied with the proposed change, Marla's parents requested a due process hearing on August 14, 1978. The hearing was completed on March 23, 1979 and the hearing officer submitted his report to the Commissioner of Education on May 16, 1979. The hearing officer recommended that the Rose's appeal be dismissed because the proposed placement provided Marla the full appropriate education required by law. *See Springdale School District v. Grace*, 656 F.2d 300, 303 (8th Cir. 1981). (defining "appropriate education" under the Federal Act). The Commissioner adopted the hearing officer's report verbatim and dismissed the Rose appeal.

On June 28, 1979, Marla's father, George Rose, filed a *pro se* complaint in this Court challenging the Commissioner's decision. [CV. 79–0–300]. In compliance with the Federal Act's requirement that a child's educational placement be held in status quo during litigation 20 U.S.C. § 1415(e)(3), the parties to that suit entered into a stipulation providing that Marla would attend Monroe Junior High School where Marla's studies would be practically identical to those at Beveridge. After two weeks, Marla's parents unilaterally removed her from Monroe and placed her in an unaccredited private school with no special programs for deaf children.[3] Mr. Rose's suit was dismissed for failure to join an indispensible party on November 29, 1979. On February 2, 1980 George Rose filed another action, [CV 80–0–67], again challenging the Commissioner's decision. That suit was dismissed in October, 1980 because it was duplicative of the present action.

On May 16, 1980 Judge Denney entered an order in this case providing in part that Marla was to "be returned to her 'then current educational placement' in the Omaha Public Schools" and, absent a contrary agreement between the parties, remain

---

**3.** The parties agree that neither Monroe nor the private school provided Marla with an appropriate education. Memorandum p. 6, May 16, 1980 Filing # 19.

there "during the pendency of all proceedings held under the Act." Order p. 2–3, May 16, 1980 Filing # 20. Marla resumed her studies in the Omaha School District on November 3, 1980. She remained in school until February 6, 1981.

Marla's eighteenth birthday was on February 3, 1981. On May 3, 1981 Marla married Timothy Corrado. Marla and her husband now reside outside the boundaries of the Omaha School District in an area served by the Millard School District.

DANIEL MONAHAN.

Daniel attended Madonna School, a private school for the mentally retarded, through the 1978–79 school year. The Omaha School District paid for Daniel's education at Madonna. In the Spring of 1979, Daniel became confined to a wheelchair. Since Madonna is not equipped to educate children confined to a wheelchair, Daniel's father, James Monahan, requested that the Millard School District recommend a new educational placement for Daniel. The Millard School District recommended that Daniel be placed in Millard's George Norris Elementary School.

The Omaha School District agreed to permit Daniel to attend George Norris but refused to finance that placement because the Omaha District's Hartman School could provide Daniel with the same educational opportunity. Despite the Omaha School District's refusal to finance the George Norris placement, Daniel began attending class at George Norris in August, 1979. The cost was borne by Daniel's father.

Mr. Monahan never requested a due process hearing on the Omaha School District's refusal to finance Daniel's education. Instead, this suit was filed. The Eighth Circuit Court of Appeals held that, in light of the apparent conflict between the Nebraska statute and the Federal Act, Mr. Monahan was not required to exhaust his administrative remedies.

We also concur with the district court's conclusion that, in the circumstances,

Daniel Monahan was not required to exhaust his administrative remedies under the Nebraska Act.... In the present case, Monahan's claim that the state procedure on its face conflicts with the Federal Act could not be addressed effectively by the state administrative process. 645 F.2d at 597.

As of this writing, Mr. Monahan continues to finance Daniel's education in the Millard School District.

The recent amendments to the Nebraska statutes eliminate the need for injunctive relief by extinguishing plaintiffs' primary complaint. In addition to seeking an injunction, the plaintiffs also assail the hearing procedure itself and seek damages.

█ The plaintiff Rose raises a litany of objections to the administrative hearing on Marla's educational placement and urges the Court to review that placement. While the Federal Act does provide for judicial review of the placement decision 20 U.S.C. § 1415(e)(2), the Court declines to undertake such a review in this case. Marla Rose has not attended class in the Omaha School District since February 6, 1981. Her failure to remain in school is in direct contravention of Judge Denney's Order requiring that Marla remain in her "current educational placement" throughout these proceedings.[4] In addition to her absence from school, Marla, by virtue of her marriage, is emancipated Neb.Rev.Stat. § 38–101 and currently resides outside the boundaries of the Omaha School District. Because of Marla's change in residence and her emancipation, the Omaha School District no longer has responsibility for Marla's education. Marla's educational placement must now be determined by the Millard School District— the district in which she currently resides. *State ex rel. Rittenhouse v. Neuman*, 189 Neb. 657, 204 N.W.2d 372 (1973); *Russell v. State*, 62 Neb. 512, 87 N.W. 344 (1901). In short, a review by the Court of Marla's prior placement would be superfluous.

4. The parties never agreed to any change in Marla's placement. Under the terms of Judge Denney's Order of May 16, 1980 such an agree-

ment was required to alter Marla's educational placement.

While Marla has indicated that she desires to continue her education and that she plans to move back into the Omaha School District [See Filing # 49 CV 81-0-10 and Filing # 40 CV 80-0-164], the fact remains that she has not attended school for nearly eight months and continues to reside outside the district. To ignore Marla's emancipation and change in residence and consider the merits of her prior placement would require the Court to render what would amount to an advisory opinion. Such an opinion would do more than decide the abstract proposition of what placement would be proper if Marla did reside in the Omaha School District. The Court will not engage in such an undertaking on the chance that Marla might return to her former school district. *See Cass County v. United States*, 570 F.2d 737 (8th Cir. 1978).

Even if there had been no change in Marla's status, the Court would be reluctant to consider the alleged infirmities in the placement hearing. The Appeals Court observed that "the placement hearing was free from procedural error save for the alleged impermissible review by the Commissioner." 645 F.2d 599. The essence of this dispute is a disagreement between Marla's parents and the Omaha School District regarding Marla's proper educational placement. Such a disagreement does not itself lead to the conclusion that there was some defect in the hearing procedure. Marla's parents have already had the benefit of a due process hearing. The only colorable defect in the hearing procedure was the Commissioner's review. That review amounted to nothing more than the Commissioner adopting the hearing officer's decision verbatim. Any violation of due process resulting from the Commissioner's review was, like Narcissus' reflection, illusionary.

The plaintiff Rose also raises a claim for damages. If damages are ever recoverable under the Federal Act—an issue the Eighth Circuit expressly did not decide[5]—there is no basis for making any award here. Rose certainly sustained no damage from the Commissioner's unequivocal endorsement of the hearing officer's decision. Nor can Marla's parents recover the tuition for sending her to a private school. The decision to withdraw Marla from the Omaha School District was made solely by Marla's parents. Faced with a similar situation, the Fourth Circuit observed in *Stemple v. Board of Education*, 623 F.2d 893, 897 (4th Cir. 1980) that:

> [The Federal Act] creates a duty on the part of parents who avail themselves of the hearing and review provisions of § 615 to keep their child in his current educational assignment while the hearing and review provisions are pending. . . . Of course, that duty may not be totally enforceable by the state, but it certainly negates any right on the part of parents, in violation of the duty and in the absence of agreement, to elect arbitrarily to place their child in a private school and recover the tuition costs thus incurred.

The Eighth Circuit Court of Appeals cited *Stemple* with approval, finding that Marla's parents were "not presently entitled to compensation for the cost of sending her to a private school." 645 F.2d at 598. Under the circumstances, no damages are recoverable.

Marla is now emancipated and living outside the Omaha School District. As a result, further proceedings on her proper placement in that district would be pointless. The primary issue raised by this action has been mooted by the amendments to the Nebraska Statutes. Accordingly, the Court finds that as to the plaintiff Rose this action is moot and should be dismissed.

---

**5.** In a footnote the Court said "we do not reach the . . . question whether money damages are ever available under the Federal Act." 645 F.2d at 598 n.9. (Citations omitted).

The Seventh Circuit, however, recently considered the damage issue in *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir. 1981.) The Court affirmed the district court's denial of a damage award. "We hold that Congress, though including within the [Federal Act] a private right of action which authorizes district courts to award appropriate relief, did not intend to provide an award of money damages in the absence of exceptional circumstances."

■ The plaintiff Monahan did not exhaust his administrative remedies. Rather, he brought this action seeking a judicial determination of Daniel's proper educational placement. Monahan was not required to exhaust the available state remedies *solely* because of the alleged inconsistency between the state and federal statutes. 645 F.2d at 597. That inconsistency has now been rectified and there is no longer any justification for permitting Monahan to circumvent the state procedure. The state's hearing officer is in the best position to make an initial determination on Daniel's proper placement. And, there is no reason to believe that the state cannot or will not proceed in an expeditious manner if Mr. Monahan opts for a due process hearing.

The whole tenor of the Federal Act indicates that judicial review is appropriate only after the state has made a final placement decision. The Second Circuit Court of Appeals in *Riley v. Ambach*, 668 F.2d 635 (2nd Cir. 1981) reversed a district court's decision to enjoin various regulations promulgated by state school officials relating to the classification and placement of handicapped children. Finding that the plaintiffs should have been required to exhaust their administrative remedies, the Court observed that:

> A strong state interest is reflected in the establishment of a comprehensive scheme of regulation; authority over the subject matter of the dispute has been vested in an expert supervisory body, far more familiar than a Federal Court with local factors that legitimately affect administration. [Citations omitted]. If the expert agency cannot resolve the problem finally, the record made in the administrative proceedings will be extremely helpful to the court, since the administrative agency will likely have probed the issue with more expertise than a federal court could bring to bear, and therefore, have illuminated the issue for final decision in the federal court.

at p. 640. This consideration is particularly important in the present case. A determination on the merits of the Monahan complaint would undoubtedly require a comparison and evaluation of the programs available at the Hartman and George Norris schools. This Court has no particular expertise in determining which school can best meet the needs of Daniel Monahan. That issue is best resolved, at least initially, by the state. The Court concludes that the plaintiff Monahan must exhaust his administrative remedies before seeking further judicial relief. See, *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770 (1st Cir. 1981).

■ Parenthetically, it should be noted that Monahan is not entitled to any damage award. That issue was, for all practical purposes, disposed of by the Eighth Circuit. "[T]he decision to place Daniel in the Millard School District was made by his parents unilaterally; they must bear the resulting tuition expense." 645 F.2d at 598.

### Rose v. State of Nebraska, et al.
### CV 81–0–010.

This case presents essentially the same issues considered in CV 81–0–164. Their resolution in the previous discussion is applicable here. The plaintiff Rose does raise one additional issue. Namely, Mr. Rose alleges that the hearing officer erred in his disposition of case No. 80–06. That action was filed by Mr. Rose before the Nebraska Department of Education. It again challenged the educational placement of Marla Rose. The hearing officer dismissed Rose's petition because Judge Denney's Order in CV 80–0–164, requiring that Marla remain in her current educational placement, was in effect. See *Rose v. School District of Omaha*, Decision and Order p. 13 Case No. 80–06 (Dept. of Ed. Dec. 8, 1980).

Given the status of Marla's placement at the time, the hearing officer's decision was proper. More important for purposes of this action is Marla's change in status. Since Marla is now married and residing outside the Omaha School District, the hearing officer's decision is moot.

In short, the Court finds that the questions presented in CV 80–0–10 are duplicative of those raised in CV 80–0–164 and are

mooted by Marla's decision to marry and move outside the Omaha School District.

THEREFORE,

IT IS ORDERED that defendants' motion to dismiss CV 80–0–164 and CV 80–0–010 is sustained. CV 80–0–164 and CV 80–0–010 are accordingly dismissed without prejudice.